Thank you, Your Honor. I'm John Gayhart for D.G.G.L. and may it please the court. This case involves a smuggler trying to fraudulently traffic a child's report of entry and border inspectors improperly processing that child's case as an adult case, resulting in the creation of an I-213 based only upon third party statements without any foundation and that lacked credibility. The BIA held that such I-213s should be considered as truthful and reliable. As kind of a preface to the entire focus of this case, in the case of smuggled unaccompanied minors, there is a myriad of regulations arising from the TVPRA, the Flores Settlement. Of course, there's all the precedent decisions. It's its own little world in that way. But inspectors should refer smuggled unaccompanied minors to an ICE Juvenile Coordinator for OR placement to ensure proper care and orderly processing that generally results in the NTAs getting properly served by the OR provider. In my client's case, the inspectors processed her as adult, issued her an NTA, and then referred her to ICE for OR placement. And the court can find this in the I-213. This would be page 178 of the Certified Administrative Record. Now... Is there any evidence of any efforts that the DHS made to get the live testimony of either of these witnesses? No. Ms. Lopez Martinez? No, there is no evidence of any effort to get any live testimony. How do you respond to the argument, Mr. Gujarat, if I can ask it? Yes. The petitioner failed to put into dispute the reliability of the statements in the I-213, and that showing would have been required before DHS had to make a specific showing as to why it couldn't get the live testimony. Well, there is a volume of evidence in the record showing that we objected, attempted to suppress, and put forth a myriad number of arguments stating that the I-213 was unreliable. And if it's unreliable, then DHS cannot meet its burden of showing by clear and convincing evidence the nationality of the child. One of the I-213s was from the child's mother. Why is her statement unreliable? It's hearsay, but why is it unreliable? Because the DHS did not verify in any way that it actually was the child's mother. This could easily have been another member of the smuggling ring that was bringing the child in. There is no evidence that they went out to talk to the mother or to verify that this person is the mother. In fact, in the I-213 on page 2, the evidence of the child's nationality and date of birth does not come from the alleged call to the mother. It comes from the smuggler, the person who just went in front of an inspector and lied about the child's identity and tried to present an Alabama birth certificate to say this kid's born in Alabama. That's where the DHS' evidence of nationality and date of birth comes from, from this person. And I'm arguing that this person's not reliable. And why aren't they reliable? Because they just committed fraud. And anybody who commits fraud, regardless of the venue, legal venue, that's impeachable, showing that this person's not credible. They just lied. And beyond the lies that were said in primary inspection, in secondary inspection, you have inconsistent statements that, again, raise the doubt of the veracity of the things that this smuggler is saying. Where was your evidence that the person who pretended or said that she was the mother of the child was not the mother of the child? Because DHS does not, in the I-213 of page 177, it just says, contact was made by phone. It doesn't, how do they know it's the mother at the other end of the telephone call? It could have easily been another person because the statements by the mother also cast doubt on whether this is really the mother. Because, oh, yes, I've been living in the United States for 10 years. I was in Mexico six years ago. And I last saw my daughter in Mexico three years ago. So even the timeline that these officers are taking from this person is completely impossible. Not just unbelievable, it's impossible. You couldn't have last been in Mexico six years ago and then saw your child in Mexico three years ago. And this is where the doubt should rise. Council, what I find odd about this statement is that somebody from DHS calls someone, Irene Lopez Martinez, who then gives her address and volunteers. She's in the country illegally, like, come get me. I mean, I don't understand this one at all. Like, why would someone make all these statements against their interest? You know, just because DHS calls, I would think your reaction would be to maybe hang up. But I don't know. I agree. To me, that's what made me very skeptical about this comment was that it doesn't seem real to me. But since they did have her address and phone number and knew she was here illegally, why didn't they go make contact with her and have her come testify? I mean, it seems very strange to me that they had all this information and didn't bring her into the court. And I think that's part of the reason why this case is just so odd because my entire career doing immigration law, I have never seen an I-213 that lacked any statement whatsoever of the subject of the I-213. This is the first time I've ever seen an I-213 because normally the I-213 is made after an interview with the subject. In this case, there is none. And we even pulled some of our other juvenile cases yesterday to look at their I-213s, and every single one of those children's I-213s has at least had some statement by the child in the I-213. In this case, there is absolutely nothing by the subject. And that's why we argued before the IJ and the BIA that this court's decision in Espinosa saying that if there is no statement by the subject of the I-213, that the BIA and the IJ should not presume the truthfulness of the I-213. And that was ignored. Why she didn't give a statement? The best explanation we have... I'm sorry. Go ahead. I didn't mean to talk over you. I'm sorry. I don't... It's hard with this Zoom call. But the best evidence that we have is actually found on page 210 of the car. My colleague, Lourdes Haley, took a... made a declaration because she spent a lot of time with this little girl. And to the best of our understanding, this little girl was completely traumatized by being processed as an adult and not being processed properly as a child. And if it helps the court, because I know you have hundreds, if not thousands, of lines of text in regulations and precedent and whatnot, settlement agreements, I actually found a flow chart for CVP processing. It's from a DHS OIG. It's from publication 10-117. And if your clerks want to or your honors want to go and look it up, it'll at least allow you to wrap your minds around how the processing should work. Because in my client's case, that didn't happen. What's on this flow chart, the way it should have worked, and the compliance with all this complex array of child-based regulations was not followed. And that's what resulted in this very complicated and very unique set of facts. Counsel, may I ask you, where is your client now? In terms of right now, I am not exactly sure where she is. I know that she is still in Los Angeles, to the best of my knowledge. Is she still in detention? Oh, no, no, no. It's been years we've been litigating this. I believe she's in Los Angeles. And the last I heard that she was recovering from COVID. Do you want to reserve some time? Yes, I'll reserve some time, your honors. Thank you very much. Okay, thank you. Okay, Ms. Singer? Good morning, your honors. May it please the court. My name is Jennifer Singer, and I represent the United States Attorney General, the respondent in this matter. And given the court's order that was issued on Friday, I guess I'll just jump right into that issue, as it seems like the court is interested in hearing on that. And my first response to that is that it seems like the cross-examination issue under Hernandez, Guadarrama, and Zidane cases is just being brought up as an issue now, because in the proceedings below, petitioner never asserted the right to cross-examination, or even expressed a desire to have the witnesses present to have the opportunity to cross-examine them. And petitioners, numerous filings before the immigration court, and in numerous hearings before the immigration court, it was never asked or mentioned that they sought to cross-examine these witnesses. And absent that indication, the government really had no notice or impetus to make reasonable efforts to secure these witnesses. Are you saying that that excused the government from its obligation to provide a reasonable basis for failing to provide the witnesses live? I don't want to say excuse, but there has to be some kind of impetus where the government's obligation comes into play and cross-examination is a right that can be waived in absence, some kind of expression that cross-examine is desired or that these witnesses need to be present is expressed. And there's really no impetus or notice for the government to make efforts to secure the witnesses. And particularly in immigration cases where a lot of reliance is made on third-party hearsay testimony, I would argue that there's some kind of notice or something has to be put on the record to make that desire known because, I mean, as a practical matter, the government's not going to seek to, to procure all these hearsay witnesses that are generally the basis for a lot of the evidence in immigration proceedings. Isn't this, isn't the I-213 facially insufficient? Because it lacks a statement by the child. And I mean, shouldn't the IJ know that this document is facially insufficient under the law? We are supposed to presume the IJs know the law, right? That's correct. But I don't believe that the, I mean, the issue of the reliability of the statements was litigated before the IJ and the board. And I think both of them reasonably and properly found that it was admissible and worthy of weight to be given to it. They assessed the reliability of the statements and the simple fact that the little girl who was six at the time, just because she didn't have statements, doesn't per se make the I-213 inadmissible or unreliable. And just quickly back to the cross-examination issue. And that's how I would distinguish the facts of this case from the Hernandez Guadarrama and the Sedane case, because in that cases, the petitioners in those cases expressed their desire to have witnesses present and cross-examine the adverse witnesses against them. And in the absence of that, the expressed desire to have cross-examination, the agency properly admitted the I-213 as the statements in there were found to be reliable and really putting the mother's statements aside because I don't, the I-123 here is at issue because it was used to prove the alienage of the petitioner here. And I would argue that the mother's statements are somewhat irrelevant here because they don't really, in my view, prove the alienage. They are simply more valuable in terms of corroborating the smuggler's statements, making the smuggler's statements more reliable. And the smuggler is the one who made admissions that the respondent or that the petitioner was born in Mexico and it was found to be reliable and it is reliable. She made statements against interest and that has been held to be reliable. And given that, the alienage is proven. And if the court were to find that Hernandez-Guadarrama controls here, I would argue that remand would be required and not that the order of removal be vacated because unlike the case of Hernandez-Guadarrama where the I-213 was the sole source of evidence to prove removability, DHS here submitted at least two other pieces of evidence to prove alienage and that was a school report and a Mexican population registry. The IJ declined to consider those and instead relied on the I-213. So if the court finds that the I-213 is unreliable, I would argue that remand for consideration of the additional pieces of evidence is the appropriate remedy here. As to the other issues of service on a minor and the Flores issue, I think unless the court has questions, I would rest upon the briefs. I think the issues are pretty well discussed in there. No questions and I will rest on the briefs. Ms. Singer, I have a question. I'm trying to get my head around what your opening argument was, your opening points were. Is it your point that the six-year-old child didn't object to the introduction of the I-213 so therefore she waived her right to cross-examine? No, Your Honor. My argument is that in the court's order issued on Friday, the cases that were cited stand for the proposition that the government has to make reasonable efforts to procure witnesses so petitioner has an ability to cross-examination. And my argument is that the desire to cross-examination or the assertion of that right was never raised at any time in any of the proceedings below despite myriad filings with the court and myriad appearances before the immigration judge. I'm just arguing that the specific right to cross-examination has been waived and as it was not raised. But even absent that, the I-213 is admissible and reliable. So I guess I'm making two separate arguments. Was the six-year-old child represented by counsel? She was represented by counsel. At the first hearing, she appeared with her father. And a continuance was granted to obtain counsel. And nothing happened at the first hearing other than the continuance. And from the second hearing on, petitioner was represented by counsel the entire time. Okay, thank you. So thank you. And Mr. Gahard? Thank you, Your Honor. Regarding Sedain and Hernandez of Guadalrama, in Sedain it was a similar situation to this particular case because no witnesses got called by the government to sustain the credibility and reliability of the I-213. In Hernandez' case, they presented two of the authors of the I-213, but the court still came back and said, hey, you don't have the third-party witness whose testimony you're relying on. This is all hearsay. And you should give us something a bit more because we don't have the author or the subject of the I-213 making these statements. And the subject should have the right to cross-examine. But also the court needs the ability to know that this particular third-party witness whose hearsay statements are coming in are reliable. May I ask a question of you here? Please. Your argument that the, well, two things. Your opposing counsel asserted that there was a failure on the part of DGDL to even ask for cross-examination. Do you agree with that as a matter of what the record reflects, either before the IJ or the DIA? And second, is there a need to specifically request cross-examination when you have these two statements, one of which is facially inconsistent, the statement of the mother, and the second is by a person who has admitted that she attempted to defraud the government? That's exactly the point, Your Honor. The burden is on the government here. I don't think this situation where the burden is on the government, that they should be shifted at, oh, we need all of this evidence. When the government should look at its own evidence, look at this I-213 and say, you know what? This isn't very convincing. We should probably buttress the information we have in this I-213 with corroborating evidence and or testimony from the people who made these statements. It's not our burden to prove nationality. It's the government's burden. So your position would be, so you would say that the IJ erred by admitting this facially insufficient, but still, I guess your opposing counsel makes another point, which is given that the IJ was making that error, did you waive it by not objecting at the time? No, we definitely objected to the admission and to the reliability of the documents. We had two sets of motions. There are two sets of motions in this case. Do you have record sites for that that you preserve the argument? I mean, you don't have to do it right this second. You can email something in to the court clerk later today. Okay. And if we agree with you, what's your remedy? What are you asking specifically? Termination. Termination. Because there are a whole bunch of problems with the service. When we get into the EOIR clerk's office, accepting these NTAs, which are incomplete, that don't follow the rules for processing of minors. But beyond that, the focus of the Friday order is that the I213 does not establish, by clear and convincing evidence, that this child is not a U.S. citizen, because the statements therein are inconsistent and are very vulnerable to doubt, based upon the fact that you're relying on someone who just committed a federal offense by lying to inspectors at primary inspection about this child's identity. And certainly, if I were in the judge's chair and looking at this case, I'd go, wait a minute. What other information do you have? And even when the government attempted to present a CURP, which is a Mexican registry document, even that document had inconsistencies, because there were two registration dates that conflicted. So all of the evidence in this case, and that's in our briefs, and one of the two briefs that I believe in the second motion, set of motions that we made, show that the government did not establish, by clear and convincing evidence, that this child is not a citizen, because there is reason to doubt the veracity of the documents that the government presented. All right. Thank you, counsel. DGGL versus Wilkinson will be submitted, and we'll take up short versus U.S. Thank you. Thank you very much, counsel.
judges: Wardlaw, Bea, Rosenthal